584

Tommy MEADE, Appellant,

v.

SPUD MINING; George S. Schuhmann, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Robert RAMEY, Appellant,

v.

FOOLS GOLD ENERGY; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Franklin A. McQUEEN, Appellant,

v.

BARBARA C. COAL COMPANY; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Billy SOWARDS,

v.

M M & B COAL COMPANY/COAL MAC, INC.; Donald G. Smith, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Elmer B. DAVIS, Appellant,

v.

MINTON HICKORY COAL COMPANY; Ronald W. May, Administrative Law Judge; and Workers' Compensation Board, Appellees.

Nos. 96–CA–768–WC, 96–SC–770–WC, 96–SC–774–WC to 96–SC–776–WC.

Supreme Court of Kentucky.

May 22, 1997.

Rehearing Denied Sept. 4, 1997.

Jonathan Stanley, Rebecca Baylous, Thomas G. Polites, Timothy J. Wilson, Wilson & Stanley, Lexington, for Appellants.

Deron L. Johnson, Prestonsburg, for Appellee Spud Mining.

Paul E. Jones, Pikeville, for Appellee Fools Gold Energy.

John V. Porter, Wells, Porter, Schmitt & Jones, Paintsville, for Appellee Barbara C. Coal Co.

Eric D. Hall, Prestonsburg, for Appellee M M & B Coal Co./ Coal Mac, Inc.

Barry Lewis, Hazard, for Appellee Minton Hickory Coal Co.

OPINION OF THE COURT

The claim for retraining incentive benefits (RIB) which is the subject of each of these workers' compensation appeals was filed on or before April 4, 1994, the effective date of the 1994 amendment to KRS 342.732(1)(a). Therefore, each claim was pending on that date. None of the workers was engaged in retraining at the time of his award, and all

continued to be employed in the coal mining industry.

In each of these claims, the Administrative Law Judge (ALJ) determined that the worker had contracted category 1 coal workers' pneumoconiosis and that he remained employed in the mining industry at the time of the award. The ALJ noted that, effective April 4, 1994, KRS 342.732(1)(a) was amended to provide that a RIB was not payable directly to a working miner. Furthermore, the provision did not provide direction concerning the proper procedure in instances where a working miner was not presently engaged in retraining. Hence, the ALJ determined that an award of RIB to a working miner was "much like a drawing account," the total amount of which was equal to the worker's maximum statutory RIB benefit, less the attorney fee. The ALJ also determined that the claimant could draw on the amount throughout his lifetime so long as the withdrawal was consistent with the restrictions imposed by KRS 342.732(1)(a).

In each instance, the employer appealed to the Workers' Compensation Board (Board), arguing that the ALJ had erred in providing that the award was payable at any time during claimant's lifetime. The Board noted that KRS 342.732(1)(a) provides for a RIB to be paid "for a period not to exceed 208 weeks." Therefore, the central issue was whether the legislature had intended the 208–week period to be a limitation on the duration of the award or an indication of the total amount of the award.

Relying on *Chisholm Coal Co. v. Downey*, Ky., 865 S.W.2d 315 (1993), and the fact that KRS 342.732(1)(a) contains no provision for extending the 208–week period, such as the extension for periods of temporary total disability which is contained in KRS 342.730(1)(b), the Board concluded that a RIB award is payable only during the 208 weeks consecutive to the date upon which the award becomes final. See KRS 342.040(3). Therefore, the awards were reversed to the extent that they would permit the payment of benefits more than 208 weeks after the date upon which they became final. Each of the claims was remanded to an ALJ for further consistent proceedings.

The workers appealed to the Court of Appeals, arguing that the Board had erred in determining that a RIB award must run for the 208 consecutive weeks following finality of the ALJ's decision. The Court of Appeals analogized the award of RIB to a working miner to the award of future medical benefits. In either instance, the court explained, the worker's entitlement is established when the award becomes final. However, since the actual payment of benefits is not authorized until one of the specified conditions is met, the exact amount of the benefit is indeterminate at that time. In addressing the argument that this group of workers was unfairly penalized by the Board's construction of the amendment, the court noted that working miners who filed RIB claims in anticipation of the 1994 amendments to the Act had done so with the expectation that the benefit might be eliminated. Hence, they had taken a risk that the amendment would not be found remedial and had lost. The court emphasized that the purpose of the benefit was to encourage affected miners to seek retraining and to become employed outside the coal industry before they became occupationally disabled. As was recognized in *Thornsbury v. Aero Energy*, Ky., 908 S.W.2d 109 (1995), the purpose of the 1994 amendment was to increase the effectiveness of the benefit. The court concluded that if the 208–week period could be tolled as long as a worker desired, the purpose of the benefit would be undermined or entirely circumvented. Therefore, the decision of the Board was affirmed.

The workers now appeal to this Court. They argue that, contrary to the construction adopted by the Board and the Court of Appeals, KRS 342.732 does not require that a RIB be awarded for the 208 consecutive weeks following the date of the award. They argue that since the amended version of KRS 342.732(1)(a) places conditions on the payment of a RIB to a working miner, additional findings will be required at the time one of the conditions is met, and an order authorizing payment will also be required. Hence, they assert, an award to a working miner pursuant to the statute is not sufficiently final to trigger commencement of the 208–

week payment period. Furthermore, the workers seek to distinguish RIB awards to working miners from awards of future medical expenses, arguing that generally it is not necessary to prove entitlement to medical expenses each time they are incurred. Finally, they argue that the class composed of workers whose claims were pending on the effective date of the amendment are unfairly penalized by the decisions of the Board and the Court of Appeals.

The employers argue that, in view of the purpose of the benefit, an award of RIB should run for the 208 weeks following the date the award becomes final. Therefore, they urge that the decision of the Court of Appeals be affirmed.

No fewer than three statutes address the payment of a RIB. KRS 342.732(1)(a) provides that where an ALJ determines that a worker exhibits the requisite evidence of category 1 coal workers' pneumoconiosis:

he shall award a one (1) time only retraining incentive benefit which shall be an amount equal to sixty-six and two-thirds percent (66⅔%) of the employee's average weekly wage but not more than seventy-five percent (75%) of the state average weekly wage as determined by KRS 342.740, multiplied by fifty percent (50%) and shall be payable for a period not to exceed two hundred and eight (208) weeks. These benefits may be paid directly to the employee only if the employee is not working in the mining industry in the severance and processing of coal as defined in KRS 342.0011(23)(a), in which event the one (1) time only retraining incentive benefit awarded under this paragraph may be collected semimonthly as provided in KRS 342.040. While the employee is working in the mining industry in the severance and processing of coal as defined in KRS 342.0011(23)(a), and if the employee is enrolled and actively participating in a bona fide training or education program approved under administrative regulations to be promulgated by the commissioner, benefits awarded under this paragraph shall be paid directly to the institution conducting the training or education program on a semimonthly basis. The benefit shall not

be paid for a period in which the employee ceases to participate in the program. In no event shall the benefit be paid to the employee while the employee is working in the mining industry in the severance and processing of coal as defined in KRS 342.0011(23)(a), nor shall the employee personally receive any benefits pursuant to this award other than for traveling expenses. When the employee, through no fault of his own, is no longer working in the mining industry in the severance or processing of coal as defined in KRS 342.0011(23)(a), then any remaining benefits shall be paid directly to the employee on the same monthly basis as provided in KRS 342.040.

KRS 342.316(1)(b) provides, in pertinent part, that:

the time of the beginning of retraining incentive benefits awarded under KRS 342.732 shall be the date the award for those benefits by the administrative law judge becomes final.

Finally, KRS 342.040(3) provides:

All retraining incentive benefits awarded pursuant to KRS 342.732 shall be payable on the regular payday of the employer, commencing with the second regular payday after the award of the retraining incentive benefit by the administrative law judge becomes final. Retraining incentive benefits shall be due and payable not less often than semi-monthly.

Reading these provisions in concert, considering the purpose of the RIB, and relying upon *Downey,* the Board and the Court of Appeals have determined that the 208–week period contemplated by KRS 342.732(1)(a) must begin on the date upon which the award becomes final and continue, uninterrupted, until it expires. First, we observe that *Downey* was decided in 1993, before the effective date of the conditions for payment which are at the heart of the issue in this case. There, the question posed by the employer was whether KRS 342.732(1)(a) authorized an award of RIB for a period of fewer than 208 weeks in instances where the medical evidence on the merits of the claim was conflicting. In rejecting that argument, we noted that KRS 342.732 and KRS 342.316

severely limited the discretion of the ALJ in awarding benefits for coal workers' pneumoconiosis. Based upon the specified findings of fact, a worker either was entitled to receive a RIB, or he was not. An award of a shorter duration was not authorized simply because the medical evidence was conflicting. Unlike the Board and the Court of Appeals, we do not find *Downey* to be persuasive concerning the issue with which we are presently faced. However, with that exception, we otherwise agree with their decisions.

Before April 4, 1994, a RIB was payable to any coal worker upon a properly supported finding of category 1 coal workers' pneumoconiosis. However, since that time, KRS 342.732(1)(a) has imposed certain conditions upon the payment of a RIB. The benefit is no longer payable directly to a recipient who continues to work in the mining industry, although it may be paid to an institution at which the worker is enrolled in an educational or retraining program. Furthermore, the post-April 4, 1994, version of KRS 342.732(1)(a) separates the conditions for the award of a RIB from the conditions for payment. The plain language of KRS 342.732(1)(a) requires the award of the benefit upon a properly supported finding of category 1 disease. Hence, where a meritorious claim has been filed, the benefit must be awarded even in instances where the conditions for payment have not been met.

In the original awards, the ALJ viewed the benefit as a drawing account, and the claimants argue that there is no evidence the legislature intended for the benefit to be used in the 208 weeks following finality of the award or be lost. However, regardless of whether a different manner of payment might be more responsive to the individual needs of affected workers, the plain language of the formula contained in KRS 342.732(1)(a) and the payment provision contained in KRS 342.040(3) contemplate a weekly benefit which is payable no less often than semi-monthly and which begins on the second regular payday after the award becomes final. There is no indication that these provisions contemplate a composite sum which may be disbursed over an indefinite period of time.

KRS 342.316(1)(b) and KRS 342.040(3) indicate that the date upon which the benefit is to begin and the date from which it is payable are mandatory. Although these three provisions do not explicitly provide that the benefit will be lost if not paid within 208 weeks of the date the award becomes final, they do specify the conditions under which payment of the benefit is authorized as well as the time at which the benefit "shall" begin and the date from which the benefit "shall" be payable. Therefore, although the benefit must be awarded upon a properly supported claim, in those instances where the claimant continues to work in the mining industry, it is entirely possible that payment of the benefit will not be authorized within the 208-week period before the award expires.

In *Eastern Coal Corp. v. Blankenship*, Ky., 813 S.W.2d 808, 810 (1991), we observed that the apparent purpose of the RIB was to encourage coal workers who had contracted category 1 pneumoconiosis, but who as yet had experienced no significant respiratory impairment, to seek employment outside the mining industry before their condition worsened. We concluded that the pre–1994 version of KRS 342.732(1)(a) was ineffective in accomplishing that purpose and encouraged the legislature to adopt a more effective remedy. Subsequently, in *Thornsbury*, we determined that the 1994 amendment to KRS 342.732(1)(a) was remedial legislation which was enacted in an effort to more effectively accomplish the purpose of the provision. Aside from being contrary to the plain language of KRS 342.316(1)(b) and KRS 342.040(3), it would defeat or, in the least, undermine the very purpose of the 1994 amendment for a working miner to obtain an award which "locks in" the entitlement to a RIB but which permits the worker to defer payment of the benefit until some uncertain future date.

We recognize that in one instance a working miner was permitted to hold an award of income benefits in abeyance for so long as he continued to work for the same employer rather than have his claim dismissed. See *Smith v. Leeco, Inc.*, Ky., 897 S.W.2d 581 (1995). However, *Smith* involved an award for income benefits pursu-

ant to KRS 342.732(1)(d) which, unlike a RIB, are based upon the worker's occupational disability. Although KRS 342.316(1)(b) provides that RIB benefits shall begin on the date upon which the award becomes final, it provides that an award of income benefits shall commence with the worker's last injurious exposure or actual disability, whichever last occurs. In *Smith*, we determined that, regardless of the irrebuttable presumption of total, occupational disability contained in KRS 342.732(1)(d), the worker was not permitted to receive income benefits while he remained in the employment. Therefore, holding the award in abeyance, rather than dismissing the claim, enabled the worker to be certain that he would receive income benefits before he quit his job. To delay payment of an income benefit indefinitely until after the recipient is no longer employed in the mining industry is consistent with the purposes of the benefit, one of which is to replace lost income. Whereas, to delay the payment of a RIB indefinitely is inconsistent with accomplishing its purpose. We conclude that *Smith* is neither persuasive nor controlling of the facts before us.

The fact remains that it is a claimant who controls the filing of a claim for RIB. Nothing forces a worker to file a claim pursuant to KRS 342.732(1)(a) until such time as he is ready to meet the conditions which authorize payment of the benefit. With regard to these particular workers, the decision in *Thornsbury* became final in November, 1995, at which time they were put on notice that the 1994 amendment to KRS 342.732(1)(a) applied to their claims. None of these awards was rendered after November, 1995, and the workers' entitlement to the benefit has not been disputed since the awards were rendered. Furthermore, 803 KAR 25:120, the administrative regulation relating to bona fide training or education programs, became effective on February 9, 1995. Hence, these workers have long since known that the 1994 amendment applied to their claims and have had ample time to plan for retraining or for leaving the industry if that is their intention. Contrary to the arguments which they have advanced, we are not persuaded that further

delay is justified or is consistent with the purpose of the benefit.

We conclude that an award of RIB begins on the date upon which the award becomes final and extends for the 208 consecutive weeks *which follow the award*. In those instances where an award has been appealed, the award becomes final for the purposes of KRS 342.316(1)(b) when the appellate process has been exhausted. See *Snawder v. Stice*, Ky.App., 576 S.W.2d 276 (1979). Where a worker's entitlement has been established, the benefit is payable as set forth in KRS 342.040(3) to the extent that the payment of benefits is authorized by KRS 342.732(1)(a).

The decision of the Court of Appeals is affirmed, and the claims are remanded to an ALJ for the entry of awards which are consistent with this opinion.

All concur.

JOHNSTONE, J., not sitting.