Manus DIXON, Appellant,

v.

**BLUE DIAMOND COAL COMPANY;** Hon. Sheila C. Lowther, Administrative Law Judge; Hon. Robert E. Spurlin, Acting Director of Special Fund; and Kentucky Workers' Compensation Board, Appellees.

No. 96–CA–002535–WC.

Court of Appeals of Kentucky.

Dec. 5, 1997.

Thomas W. Moak, Prestonsburg, for Appellant.

Denise M. Davidson, Hazard, for Appellee, Blue Diamond Coal Company.

Joel D. Zakem, Louisville, for Appellee, Special Fund.

Before GUDGEL, C.J., and EMBERTON and JOHNSON, JJ.

## OPINION

JOHNSON, Judge.

Manus Dixon (Dixon) petitions for review of an opinion of the Workers' Compensation Board (Board) which reversed and remanded the Administrative Law Judge's (ALJ) decision that Blue Diamond Coal Company (Blue Diamond) was liable for Dixon's award of retraining incentive benefits (RIB). Having reviewed the record and the applicable law, we reverse and remand.

Dixon worked for Blue Diamond from 1987 until June 11, 1991, when Blue Diamond went out of business. On September 12, 1991, after performing an examination and chest x-ray, Dr. William Anderson diagnosed Dixon with Category 1/0, pneumoconiosis. In November 1991, Dixon became employed by Double N Coal Company (Double N). A second x-ray was taken on February 10, 1992, a few weeks after Dixon began working for Double N. This x-ray, which was interpreted by Dr. Glen Baker, also indicated the presence of the occupational disease.

On March 13, 1992, Dixon filed his RIB claim in which he named Blue Diamond as the defendant. On April 23, 1992, the claim was placed in abeyance as Blue Diamond had filed for protection from its creditors under Chapter 11 of the U.S. Bankruptcy Code. Also, as Blue Diamond was uninsured on Dixon's last day of work, the Uninsured Employers' Fund (UEF) was joined as a party defendant.[1] In November 1992, the case was removed from abeyance. Blue Diamond took Dixon's deposition and discovered that he was working for Double N and had worked for Double N prior to the time he filed his RIB claim.

Several motions were filed in this case in early 1993. Blue Diamond moved to dismiss the claim on the ground that Double N should be held liable for Dixon's RIB claim

as he was last exposed to the hazards of coal dust at Double N. The UEF moved to be dismissed as a party as, by an agreement reached with the Board, Blue Diamond's certificate of self-insurance was extended to June 19, 1991, thus encompassing Dixon's claim. Dixon moved to join Double N as a defendant. On March 15, 1993, the ALJ granted all motions: Blue Diamond and the UEF were dismissed from the matter and Double N was joined as a party. In its defense, Double N contended that *National Mines Corporation v. Pitts,* Ky., 806 S.W.2d 636 (1991), required a determination that Blue Diamond was responsible for Dixon's RIB claim. After the prehearing conference held in September 1993, the ALJ, at Dixon's request, set aside that portion of the March 15, 1993 order dismissing Blue Diamond and the UEF.

On August 1, 1995, the ALJ rendered her opinion, award and order in which she determined that Dixon had met his burden of proving his entitlement to RIB. The troublesome issue for the ALJ was which employer to hold liable for the award. After analyzing the issue pursuant to the holding in *Pitts, supra,* she determined that Blue Diamond was the employer liable to Dixon, reasoning as follows:

> There must be a causal connection between the employment and the occupational disease. In the case at bar, the evidence establishes that Mr. Dixon had the disease before he commenced his employment with Double N Corporation [sic]. There is no indication that the disease has progressed. Therefore, there can be no finding that the disease arose out of and in the course of his employment with Double N. Consequently, liability for benefits awarded here lies with Blue Diamond Coal Corporation [sic].

Because Dixon was still employed in the mining industry, and thus not currently entitled to RIB, the ALJ placed the claim in abeyance until he ceased working in the industry.[2] On January 9, 1996, Dixon request-

---

1. On June 10, 1991, the Board revoked Blue Diamond's certificate of self-insurance.

2. No one objected to this procedure. However, our Supreme Court has recently held that it is not appropriate to place RIB claims in abeyance merely because the claimant does not meet the

ed that the ALJ remove the claim from abeyance. On March 25, 1996, a final order was entered removing the case from abeyance and awarding Dixon 208 weeks of RIB in the amount of $155.98 each.

On April 24, 1996, Blue Diamond filed its notice of appeal to the Board, naming as appellees only Dixon, the ALJ, and the Special Fund. In addition to arguing that Double N should be liable for the award, it also argued that the ALJ erred in the amount it awarded to Dixon. Dixon argued that the ALJ had correctly determined that Blue Diamond was responsible for the payment of his benefits. In the alternative, he argued that the appeal should be dismissed for failure to name as parties to the appeal, Double N and the UEF.

The Board rejected Dixon's contention that the appeal should be dismissed for Blue Diamond's failure to name all the parties as appellees, holding that Dixon could have filed a protective cross-appeal if he "wanted to preserve his rights against Double N or the UEF in the event of a reversal of the award against Blue Diamond[.]" In its review on the merits, the Board held that the ALJ misapplied the holding in *Pitts,* as follows:

The facts in the instance [sic] case are distinguishable from the facts in *National Mines Corp. v. Pitts,* Ky., 806 S.W.2d 636 (1991). In that case, all of the medical proof was taken before the claimant was employed by another mining company other than National Mines. The Court in that case affirmed an award against National Mines notwithstanding the fact that it was not the employer in whose employment the claimant was last injuriously exposed. The Court determined that an employer's liability for a disease claim must be premised on the fact that the disease at least to some degree arose out of and in the course of employment with that employer.

. . .

In the instant case, medical proof was taken, and the claim filed after Dixon was employed by Double N. The resolution of Dixon's claim is therefore governed by KRS 342.316(1)(a) and KRS 342.732 and not by *Pitts.* Those statutes impose liability against the employer in whose employment the claimant was last exposed.

The Board determined that the issue concerning the benefit rate was moot considering its determination that the award against Blue Diamond was in error.

In this appeal, Dixon argues that the Board erred in reversing the determination of the ALJ that Blue Diamond is liable to him for RIB. We agree. Although, as the Board discussed, the facts in this case are somewhat distinguishable from those in *Pitts,* the relevant fact upon which the ALJ predicated her decision, i.e., the causation of Dixon's occupational disease, is not.

*Pitts* holds that the latest employer for whom a RIB claimant has been employed is not necessarily liable for RIB. It is true that in *Pitts* the RIB claim was filed and all the medical proof was taken prior to the claimant's employment by another mining company. In this case, the claim was filed, and one of the two x-rays necessary to support a RIB award was taken, after Dixon commenced his employment with Double N. However, the pertinent inquiry is not the timing of these various events, but whether there is a "causal connection between the employment and the occupational disease." *Id.* at 637; *see also Moore v. Sunstone Energy, Inc.,* Ky., 849 S.W.2d 529 (1993).

The ALJ found that Dixon had pneumoconiosis *prior* to his employment with Double N. The ALJ also found that the disease had not progressed during his employment with Double N. Clearly, it was within the discretion of the ALJ to make these findings as the evidence of record, particularly the reports of Dr. Anderson and Dr. Myers, supports these findings. The facts which the Board found to be distinguishable, that Dixon did not file his claim or develop all the necessary proof to support his claim until after he began working for Double N, do not diminish the probative value of the evidence that supports the finding of the ALJ vis-a-vis the issue of causation. As her findings were supported by substantial evidence, we conclude that the Board erred in disturbing her ruling. *Spe-*

conditions for the payment of RIB. *Meade v.*

*Spud Mining,* Ky., 949 S.W.2d 584 (1997).

*cial Fund v. Francis,* Ky., 708 S.W.2d 641, 643 (1986).

Our standard of review of decisions of the Board is stated in *Western Baptist Hospital v. Kelly,* Ky., 827 S.W.2d 685, 687–688 (1992). We are "to correct the Board only where the . . . Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Id.* It is our opinion that the Board erred in refusing to apply the holding in *Pitts* to the facts in this case.

Accordingly, the decision of the Board is reversed and this matter is remanded with directions to reinstate that portion of the ALJ's decision that Blue Diamond is responsible for the payment of Dixon's RIB. On remand, the Board should also address the issue raised by Blue Diamond concerning the appropriate weekly amount of the award in light of the Supreme Court's directive in *Arch of Kentucky, Inc. v. Thomas,* Ky., 895 S.W.2d 578 (1995).

All concur.